An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e     P r o c e d u r e .

NO. COA13-1351
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

   v.

ISAAC WALTON MOORE

Person County
Nos. 12 CRS 50508-11

Appeal by Defendant from Judgments entered 21 August 2013 by Judge Henry Hight in Person County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Kimberley A. D'Arruda, for the State.*
>
> *Mark Montgomery for Defendant.*

STEPHENS, Judge.

*Factual Background and Procedural History*

On 9 April 2012, Defendant Isaac Walton Moore was indicted on four counts of statutory rape/sex offense. The case came on for trial on 19 August 2013 and a verdict was rendered the following day. The evidence at trial tended to show the following:

Between August of 2010 and November of 2011 Defendant lived with his wife and stepdaughter, Audrey.[1] Audrey was between thirteen and fourteen years old at the time, and Defendant was between fifty-two and fifty-three years old. Though Audrey and Defendant sometimes had a good relationship, Defendant would often "bother" her. According to Audrey, this involved going into her bedroom, sitting on her bed, and "touching" her. Sometimes Defendant would rub Audrey's shoulders and back. On two separate occasions, Defendant started "going down my back and touching me between my legs and putting his hands underneath my skirt." If Audrey tried to move away, Defendant moved closer. Defendant eventually removed Audrey's shirt, "played with my pants," and put his hands between Audrey's legs. Defendant then put his mouth on Audrey's "private parts," put his penis inside her vagina, and put "fake penises" inside her vagina.

Defendant told Audrey not to tell her mother about what had happened. He also bought her gifts in an attempt to procure sex. Audrey refused the offer, saying, "No. Not ever again, and I just ran in my room."

In an attempt to deter Defendant's advances, Audrey began to neglect her hygiene. This became an issue with her mother,

---

[1] A pseudonym is used to protect the juvenile's identity.

and, shortly after Defendant offered Audrey gifts for sex, Audrey and her mother had an argument about Audrey's hygiene. In order to explain her failure to keep clean, Audrey revealed what Defendant had been doing. The mother became upset and called the police.

This was the second time that Audrey had reported Defendant's actions. The first time was in 2008 in Virginia. In that instance, authorities were unable to find any evidence to support Audrey's statement, and Audrey became worried that she would not be believed. As a result, Audrey retracted her statement against Defendant. Following Audrey's argument with her mother and the subsequent revelation about Defendant's actions, however, Audrey stated that her first accusation, made in Virginia, had been truthful.

After revealing what Defendant had done, Audrey met with Sergeant Gail Shull of the Roxboro Police Department's criminal investigation unit. According to Sergeant Shull, Audrey's statements during this meeting were "consistent with" her testimony at trial. Shortly after meeting with Audrey, Sergeant Shull contacted Defendant. He agreed to meet with Sergeant Shull to discuss the allegations and, while doing so, admitted to having intercourse with Audrey on at least two occasions.

At the conclusion of the trial, Defendant was found guilty of two counts of statutory rape and two counts of statutory sexual offense. He was sentenced to 240 to 297 months in prison for each conviction, with credit for 509 days served in pre-trial confinement. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant argues that the trial court (1) erred or, in the alternative, committed plain error by repeatedly referring to Audrey as "the victim" in its jury charge and (2) plainly erred in allowing Sergeant Shull to testify that her pre-trial discussion with Audrey was "consistent with" Audrey's testimony at trial. Alternatively, Defendant asserts that his trial counsel's failure to address these issues constituted ineffective assistance of counsel ("IAC"). We find no error on the trial court's use of the phrase "the victim," no prejudicial error as to the admission of Sergeant Shull's testimony, and overrule Defendant's IAC argument.

*I. Use of the Phrase "the Victim"*

In its charge to the jury, the trial court used the phrase "the victim" multiple times to describe the crimes of statutory rape and statutory sexual offense. Defendant admits that he

failed to object to the court's use of that phrase at trial. Nonetheless, Defendant argues as a preliminary matter that the issue is reviewable *de novo* on appeal because it affects the trial court's "statutory duty not to set out only one party's contention or to express an opinion on the evidence." We disagree.

As a general rule, a party must present a timely objection to the trial court in order to preserve an issue for appellate review. N.C.R. App. P. 10(a)(1).

> In criminal cases, [however,] an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and internal quotation marks omitted). "Under the plain error rule, [the] defendant must convince [the appellate court] not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

This Court has previously held that "the trial court's reference to the prosecuting witness as 'the victim' [is not reviewed] for anything other than plain error where [the] defendant failed to object and properly preserve the issue for review." *State v. Phillips*, __ N.C. App. __, __, 742 S.E.2d 338, 341 (2013). We are bound by that decision. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Therefore, Defendant's argument as it pertains to the standard of review is overruled, and we proceed with an analysis for plain error.

Defendant argues that the trial court's use of the phrase "the victim" constitutes plain error because

> the [trial] court's repeated characterization of [Audrey] as "the victim" subtly and inadvertently yet impermissibly suggested that, in the trial court's view, the [S]tate had met its burden of proving that a crime was committed. This inadvertent bolstering of [Audrey's] credibility was a fundamental error, equivalent to designating the defendant as "the perpetrator" and had a probable impact on the verdict.

For support, Defendant cites N.C. Gen. Stat. §§ 15A-1222, -1232. Both sections forbid a trial judge from expressing an opinion on the evidence in the presence of the jury. N.C. Gen. Stat. §§ 15A-1222, -1232 (2013). Defendant also cites a number of cases from other states specifically holding that the use of the term

"the victim" constitutes an impermissible judicial expression of opinion. In this case, Defendant's argument lacks merit.

Our courts have long held that the use of the phrase "the victim" in the trial court's pattern jury charge does not constitute prejudicial error. *See State v. Jones*, __ N.C. App. __, __, 752 S.E.2d 212, 214-15 (2013) (collecting cases and holding that "the trial court did not commit plain error when it used the term 'victim' in its instruction to the jury on the offenses of first- and second-degree rape") (citations omitted), *disc. review denied*, __ N.C. __, __ S.E.2d __ (2014), *available at* 2014 WL 939074; *see also State v. Jackson*, 202 N.C. App. 564, 568-69, 688 S.E.2d 766, 769 (2010) (holding that the trial court's use of the word "victim" in its jury instruction was not an improper expression of judicial opinion on the offense of taking indecent liberties with a child and statutory rape) (citations omitted). Though we have recently held that a trial court erred by using the phrase "the victim" in its jury instructions, *State v. Walston*, __ N.C. App. __, __, 747 S.E.2d 720, 727-28 (2013) (finding error when the issue of "whether sexual offenses occurred was a disputed fact for the jury to resolve"), *disc. review allowed*, __ N.C. __, 753 S.E.2d 666 (2014), Defendant concedes that *Walston* is distinct from other

cases in which we have held that the use of the term "the victim" is not error. *See, e.g.*, *State v. Boyette*, __ N.C. App. __, 735 S.E.2d 371 (2012). Defendant also concedes that the trial court's use of the phrase "the victim" comports with the North Carolina Pattern Jury Instructions and fails to provide any *North Carolina* cases supporting a departure from the case law discussed above.

Moreover, we note that Defendant *admitted* to two acts of intercourse with Audrey. Such acts constitute crimes in North Carolina. *See, e.g.*, N.C. Gen. Stat. § 14-27.7A(a) ("A defendant is guilty . . . [of statutory rape under this section] if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person . . . ."). Therefore, even accepting the validity of Defendant's argument as evidenced by his citation to the Connecticut Supreme Court's opinion in *State v. Cortes*, "references to the complainant as the 'victim' [are] inappropriate *where the very commission of a crime is at issue*." 276 Conn. 241, 249 n.4, 885 A.2d 153, 158 n.4 (2005) (citations omitted; emphasis added). Here, whether Defendant committed *some* crime against Audrey was not at issue. Thus, under any measure, the trial court did not err, much less

plainly err, in referring to Audrey as "the victim." Accordingly, Defendant's first argument is overruled.

*II. Sergeant Shull's Testimony*

Second, Defendant contends that the trial court committed plain error in allowing Sergeant Shull to testify that Audrey's unsworn out-of-court statements regarding the two incidents were "consistent with" Audrey's testimony at trial. For support, Defendant asserts that Sergeant Shull's testimony constituted an improper and prejudicial statement of opinion by a lay witness pursuant to *State v. Norman*, 76 N.C. App. 623, 626–27, 334 S.E.2d 247, 249–50 (ordering a new trial when the issue was properly preserved for appellate review on grounds that the second witness should have been asked, "at the least," to recall the substance of the first witness's pre-trial statements before giving his opinion as to whether the first witness's trial testimony was consistent), *disc. rev. denied*, 315 N.C. 188, 337 S.E.2d 863 (1985) and *State v. Ramey*, 318 N.C. 457, 467–73, 349 S.E.2d 566, 572–76 (1986) (holding that the witness's testimony that the victim had never told him anything inconsistent was inadmissible, but did not rise to the level of prejudicial error and, therefore, concluding that the defendant "received a fair

trial free from prejudicial error"). Again, we conclude that Defendant's argument lacks merit.

Defendant admittedly failed to object to Sergeant Shull's testimony at trial. Therefore, as discussed above, the issue is reviewable only for plain error. Given the plain error analysis required in this case and pursuant to the decision upon which Defendant himself relies, we need not delve into a discussion of the admissibility of Sergeant Shull's testimony. The *Norman* case was decided on a preserved issue and, thus, is not applicable to the plain error analysis we must use here. Furthermore, the *Ramey* case concluded that, while the trial court erred in admitting the testimony, such error was *not sufficient to constitute plain error*. Thus, even if Sergeant Shull's testimony was inadmissible in this case, a new trial could only be required if that testimony was so prejudicial as to have probably affected the outcome of the trial. We hold that it was not.

Plain error is error that reaches to the core of the case and casts significant doubt on the verdict rendered and the justness of that decision. Here, Sergeant Shull's testimony that Audrey's pre-trial statements were "consistent with" Audrey's trial testimony did not carry such an impact as to prejudice

Defendant in that way. Audrey's testimony is internally consistent and provides sufficient detail regarding the nature of Defendant's actions to justify the jury's verdict. In addition, Sergeant Shull offered uncontested testimony that Defendant admitted to having sex with Audrey on at least two occasions. Defendant failed to present any evidence of his own.

Thus, even if the jury had not heard that Audrey's original statements to Sergeant Shull were consistent with her testimony at trial, it is inconceivable that it would have come to a different conclusion. Therefore, to the extent Sergeant Shull's testimony about her pre-trial discussion with Audrey may have been inadmissible, we hold that such error was not so basic and so prejudicial that the trial court should have stricken it *ex mero motu*. The challenged testimony simply had no effect on the jury's verdict. Accordingly, Defendant's second argument is overruled.

*III. Ineffective Assistance of Counsel*

Lastly, Defendant argues in the alternative that he was denied effective assistance of counsel on both of the issues described above because of his trial counsel's failure to object. We disagree.

"IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . ." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002).

> To successfully assert an [IAC] claim, [the] defendant must satisfy a two-prong test. *See Strickland v. Washington*, 466 U.S. 668, 687, . . . 80 L. Ed. 2d 674, 693 (1984). First he must show that counsel's performance fell below an objective standard of reasonableness. Second, once [the] defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different.

*State v. Harris*, __ N.C. App. __, __, 729 S.E.2d 99, 106 (certain citations omitted), *disc. review denied*, 366 N.C. 409, 735 S.E.2d 339 (2012). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Waring*, 364 N.C. 443, 502, 701 S.E.2d 615, 652 (2010) (citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698).

We have already determined that the trial court's use of the words "the victim" in its jury charge was not error. Therefore, Defendant's trial counsel did not act unreasonably in not objecting to the court's charge because the court's use of the phrase "the victim" was not erroneous. Accordingly,

Defendant's ineffective assistance of counsel argument is overruled as it pertains to the trial court's use of the phrase "the victim."

On the issue of Sergeant Shull's testimony, we failed to address Defendant's argument on the merits. Instead, we held that it was not *plain error* for the trial court to decline to strike Sergeant Shull's testimony because that testimony would not have affected the result. On appeal, Defendant argues that we may not apply our decision under the plain error standard to our decision regarding IAC because the two standards are different and "[t]his Court is not at liberty to impose a standard stricter than *Strickland*." This argument is without merit.

In order to show ineffective assistance of counsel, the complaining party must show a "*reasonable probability*" that the result would have been different. *Harris*, __ N.C. App. at __, 729 S.E.2d at 106 (emphasis added). As discussed above, we believe it is unlikely that the result of the trial would have been different if Defendant's trial counsel had objected to Sergeant Shull's testimony and that testimony had been stricken. For the same reasons, we do not believe that there is a "reasonable probability" that the result would have been

different had the testimony been stricken. Therefore, Defendant's IAC argument is overruled. Defendant had a fair trial, free of prejudicial error.

NO ERROR in part; NO PREJUDICIAL ERROR in part.

Judges GEER and ERVIN concur.

Report per Rule 30(e).